UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-61652-CIV-GOLD/MCALILEY

MDS (CANADA), INC., BEST
THERATRONICS, LTD., and
BEST MEDICAL INTERNATIONAL, INC.,

    Plaintiffs,

v.

RAD SOURCE TECHNOLOGIES, INC.,

    Defendant.
_____/

**OMNIBUS ORDER DENYING DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT [ECF No. 118]; DENYING DEFENDANTS'
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF No. 141];
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 158]**

THIS CAUSE is before the Court upon Defendant Rad Source Technologies, Inc.'s ("Defendant" or "Rad Source") Motion for Partial Summary Judgment **[ECF No. 118]**; Defendant's Second Motion for Partial Summary Judgment **[ECF No. 141]**; and Plaintiffs MDS (Canada) Inc., Best Theratronics, Ltd., and Best Medical International, Inc.'s (collectively "Plaintiffs") Motion for Partial Summary Judgment **[ECF No. 158]**.[1] The motions were fully briefed[2] when oral argument held on November 12, 2010.

---

[1] Defendant also filed three motions *in limine* pursuant to Federal Rule of Evidence 702 and *Daubert* to exclude testimony of three of Plaintiffs' experts, which I reserve ruling on at the present time. **[ECF Nos. 151, 153, 162]**.

[2] Defendants filed a Statement of Material Facts as to Which There Exists No Genuine Issues to be Tried. **[ECF Nos. 120-22]**. Plaintiffs filed an Opposition to Defendant's Motion for Partial Summary Judgment **[ECF Nos. 133-5]** and a Response to Defendants' Statement of Material Facts **[ECF No. 133-35]**. Defendant filed a Reply in Support of its Motion for Partial Summary Judgment **[ECF No. 175]** and a Reply to Plaintiffs' Response to Defendant's Statement of Material Facts **[ECF Nos. 177-78]**.

Defendant filed a Response to Plaintiffs' Motion for Partial Summary Judgment **[ECF No. 186]**; Response to Plaintiffs' Statement of Undisputed Material Facts and Statement

1

In Defendant's first Motion for Partial Summary Judgment, Defendant requests that I: (1) interpret the License Agreement entered into between the parties as a matter of law to clearly define activities that Rad Source is permitted to undertake and those from which Rad Source must abstain until expiration of the non-compete restrictions in the License Agreement on September 26, 2010; and (2) modify the November 4, 2009 Preliminary Injunction Order in accordance with the ruling on this Motion for Partial Summary Judgment.

In Defendant's Second Motion for Partial Summary Judgment, Defendant requests the same relief as set forth in its first Motion for Partial Summary Judgment, in addition to the following: (1) strike the third sentence of Section 3.1 of the License Agreement, as enforcement of this provision results in patent misuse; and (2) limit and narrowly construe the scope and duration of Section 5.3 of the License Agreement to comply with the mandates of Florida law. Defendant also seeks a determination that Plaintiffs are not entitled to damages.

Plaintiffs move for summary judgment on the following issues: (1) the non-compete provision is valid and enforceable under Florida law; (2) Rad Source violated the terms of the License Agreement's non-compete provision; and (3) the sublicense between MDS and the Best Plaintiffs is a valid sublicense, expressly authorized by the License Agreement, and does not relieve Rad Source of its obligation

---

of Additional Material Facts **[ECF No. 187]**; Reply Brief in Support of its Second Motion for Partial Summary Judgment **[ECF No. 218]**; and Reply to Plaintiffs' Response to Defendant's Statement of Material Facts **[ECF No. 219]**.

Plaintiffs filed a Memorandum in Opposition to Defendant's Second Motion for Partial Summary Judgment **[ECF No. 194]**; Response to Defendant's Statement of Material Facts in Defendant's Second Motion for Partial Summary Judgment **[ECF No. 195]**; Reply Brief in Support of their Motion for Partial Summary Judgment **[ECF No. 207]**; and Reply to Defendant's Facts **[ECF No. 208]**.

to comply with the terms of the License Agreement. Plaintiffs also request that I extend the temporary injunction previously issued against Rad Source through and until the final resolution of this litigation at trial, citing Rad Source's violation of the License Agreement's non-compete provision.

Having considered the relevant submissions and the applicable law, and for the reasons set forth at the hearing and below, I DENY Defendants' Motion for Partial Summary Judgment; DENY Defendants' Second Motion for Partial Summary Judgment; and DENY Plaintiffs' Motion for Partial Summary Judgment.

**I.       Procedural history**

On October 15, 2009, Plaintiffs brought this action alleging the following counts: (I) Temporary Restraining Order; (II) Preliminary Injunction; (III) Permanent Injunction; and (IV) Breach of Contract. **[ECF No. 1]**.[3]  Plaintiffs simultaneously filed an Emergency Motion for Temporary Restraining Order with Notice and for Preliminary Injunction ("Emergency Motion"). **[ECF No. 2]**. On October 21, 2009, I held an evidentiary hearing on Plaintiffs' Emergency Motion where the parties had the opportunity to present arguments and examine witnesses. See **[ECF No. 36]**. On October 22, 2009, I issued an Interim Order, ordering Defendant "to immediately refrain from exhibiting, distributing, promoting, marketing, selling, or leasing—whether directly or indirectly—the RS 3400 blood irradiation device or a substantial equivalent" until a subsequent evidentiary hearing and subject to the terms of a Final Order to be issued following the subsequent evidentiary hearing. **[ECF No. 37]**.

---

[3] The operative Amended Complaint alleges the same four counts. **[ECF No. 108]**. Plaintiffs seek leave to file a Second Amended Complaint **[ECF No. 248]**, which is addressed in a separate order.

On October 24, 2009, I held a subsequent hearing on Plaintiffs' Emergency Motion. See **[ECF No. 39]**. On October 27, 2009, I issued a Preliminary Order on Plaintiffs' Emergency Motion for Preliminary Injunction Setting Forth Findings of Fact and Conclusions of Law ("October 27, 2009 Order"). **[ECF No. 40]**. In this Order, I granted Plaintiffs' Emergency Motion, concluding that entry of a preliminary injunction was appropriate upon making various findings of fact and conclusions of law for the limited purpose of deciding Plaintiffs' Emergency Motion. *Id.* By this October 27, 2009 Order, Rad Source was preliminarily enjoined from "directly or indirectly exhibiting, promoting, marketing, selling or leasing the RS 3400 or any other blood or blood product irradiation device or technology" pending a further order following a hearing on the injunction's scope and bond. *Id.* at p. 18.

On October 29, 2009, I held a hearing on the scope of the injunction and issuance of bond. See **[ECF No. 44]**. On November 4, 2009, a Supplemental Order Setting Injunction Bond and Clarifying Scope of Preliminary Injunction was issued ("November 4, 2009 Order"). **[ECF No. 48]**. By this November 4, 2009 Order, I modified the scope of the preliminary injunction entered in my prior October 27, 2009 Order **[ECF No. 40]** as follows:

> Defendant Rad Source and its agents, directors, employees, officers, affiliates, attorneys, and all others in active concert or participation with any of them are hereby PRELIMINARILY ENJOINED from directly or indirectly designing, developing, promoting, manufacturing, distributing, marketing, selling, leasing, providing service for, or providing maintenance for the RS 3400 blood irradiation technology, device, or any substantial equivalent and shall not carry on any other activities which compete in any way with the blood irradiation business (including the irradiation of blood and blood products) carried on by Plaintiff MDS directly or through its sublicensees, Plaintiffs Best Theratronics and Best Medical. This injunction shall remain in full force and effect until further Order of this Court or until September 26, 2010, whichever comes first. **[ECF No. 48]**.

4

## II.     Factual background

In the Southern District of Florida, a party moving for summary judgment must submit a statement of undisputed facts. *See* S.D. Fla. L.R. 7.5. If necessary, the non-moving party may file a concise statement of the material facts as to which it is contended there exists a genuine issue to be tried. *Id.* Each disputed and undisputed fact must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *Id.* All facts set forth in the movant's statement which are supported by evidence in the record are deemed admitted unless controverted by the non-moving party. *Id.* Furthermore, pursuant to Fed. R. Civ. P. 56(e)(2), "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." *See also Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) (conclusory allegations without specific supporting facts have no probative value.").

The following facts from the parties' Motions for Partial Summary Judgment are undisputed:

Defendant Rad Source is a Florida corporation specializing in research and development of irradiation technologies. **[ECF No. 147 ¶ 1]**. Rad Source's President and CEO, Randol E. Kirk, has spent many years developing irradiation technology that utilizes x-rays as a replacement for radioactive isotope irradiation technology. *Id.* at ¶ 2.

5

In the late 1990s, Rad Source developed an x-ray blood irradiation system known as the RS 3000.  **[ECF No. 195, p. 19 ¶ 1]**.

The License Agreement closed on September 26, 2003, and MDS began to manufacture and sell the RS 3000, which became known as the Raycell.  **[ECF No. 147 ¶ 6]**.  The License Agreement did not affect Rad Source's continuing business involving x-ray irradiation for research purposes.  **[ECF No. 193, p. 19 ¶ 2]**.  As consideration for the License Agreement, MDS paid Rad Source in excess of $ 1.7 million.  *Id.* at ¶ 5.  Section 12.2 of the License Agreement address default and provides that:

> This Agreement may be terminated by a party in the event of material breach by the other party of the terms and conditions hereof, provided however the nonbreaching party shall first give to the breaching party written notice of the intended termination of this Agreement specifying the reason therefore (a "Breach Notice").  Upon receipt of such Breach Notice, the breaching party shall remedy such breach within forty five (45) days of the receipt of such notice, failing which the non-breaching party may terminate this Agreement, without prejudice to any other rights or remedies which may be available in law or otherwise.

*Id.* at ¶ 10.  Rad Source also agreed to properly maintain all of the patents that were included in the License Agreement in good standing and pay the required maintenance fees.  *Id.* at ¶ 11.

On December 14, 2007, MDS sent Rad Source a letter advising Rad Source that, among other things:  (1) MDS recently entered into an agreement with the Best Plaintiffs to sell its External Beam Therapy and Self Contained Irradiator Business; (2) MDS Nordion desires to assign the Agreement to Best; and (3) requesting Rad Source's consent to the assignment.  **[ECF No. 147 ¶ 9]**.  On January 8, 2008, Rad Source sent MDS a letter acknowledging receipt of the December 14, 2007 letter, declining to consent to or agree to the assignment.  *Id.* at ¶ 10.  Plaintiffs entered into a Sublicense

Agreement with an effective date of April 30, 2008 ("the 2008 Sublicense Agreement"). *Id.* at ¶ 12.

As a condition to closing on the 2007 Asset Purchase Agreement, MDS executed a Non-Competition Agreement with Best Medical and agreed for "a period of 7 years" to not "directly or indirectly, develop, manufacture, market or sell . . . cesium-137 based blood irradiators, x-ray based blood irradiators, other technology based bloody irradiators, and related products and services[.]" *Id.* at ¶ 21. In a press release, it was noted that MDS "signed an agreement with [Best Medical] to divest its . . . self-contained irradiator product lines" and MDS' president, Steve West, was quoted in this press release: "'By divesting these product lines, we can direct all of our energy and resources on becoming a leading innovator in the exciting and growing field of molecular medicine." *Id.* at ¶ 24.

MDS is not presently developing, manufacturing, marketing, or selling any x-ray irradiators. **[ECF No. 147 ¶ 34]**. MDS has not attended any blood irradiation trade shows since the divesture. *Id.* at ¶ 35. No continuing royalties have become due under the License Agreement since the Sublicense Agreement was executed in 2008. *Id.* at ¶ 38. Since May 2008, MDS has not sold, serviced, or marketed any blood irradiation devices, and MDS has no plans to sell blood irradiation devices in the future. *Id.* at ¶ 40. Best Theratronics and MDS co-signed notices that stated that "on April 30, 2008, MDS Canada, Inc. conveyed and transferred to Best Theratronics, Limited, all of MDS' right, title and interest in and to the . . . self-contained irradiator business." *Id.* at ¶ 41.

### III. Applicable law

On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Hilburn v. Murata Elec. North Am. Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). In considering whether the movant has met its burden, the court views the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). However, "the mere allegations of an alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment." *Assimack v. J.C. Penny Corp.*, No. 8:04-CV-2436-T-30MAP, 2005 WL 2277535, *2 (M.D. Fla. Sept. 19, 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). Once the moving party demonstrates the absence of a genuine issue of material fact, the non moving party "must go beyond the pleading through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is genuine issue for trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### IV. Jurisdiction

A federal court must always determine whether it has jurisdiction to hear a case. *See, e.g., Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006) ("The objection that a federal court lacks subject matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."); *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975 (11th Cir. 2005) ("Indeed, it is well-settled that a federal court is obligated to inquire into subject matter

jurisdiction *sua sponte* whenever it may be lacking."). As such, even when there is no dispute between the parties with respect to jurisdiction, federal courts have an independent duty to ensure that subject-matter jurisdiction exists.[4] In the instant case, I have jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the complaint alleges in good faith that the "monetary value of the object of the litigation exceeds $75,000, exclusive of interest and costs." **[ECF No. 1 ¶ 5, 9]**.

V. **Analysis**

   A. **Whether the final sentence of Section 3.1 constitutes patent misuse**

Patent misuse is an affirmative defense.[5] *See Ameritox, Ltd. v. Aegis Services Corp.*, 2008 WL 2705435 at *6 (S.D. Fla. July 9, 2008) ("the proper mechanism to assert patent misuse is to plead it is an affirmative defense"). "The policy supporting the patent misuse defense lies in the equitable clean hands doctrine." *Telecom Tech. Servs. v. Rolm Co.*, 388 F.3d 820, 831 (11th Cir. 2004).

Defendant argues that the final sentence of Section 3.1 of the License Agreement constitutes patent misuse and is therefore unenforceable as a matter of law. This sentence reads as follows:

> For the avoidance of doubt, Rad Source's retained right to use the Licensed Technology (as set out in the preceding sentence) shall not, during the term of the license, in the Territory, include the right, directly or

---

[4] On November 17, 2009, I entered an Order on Subject Matter Jurisdiction following Defendant's Suggestion that this Court Lacks Subject-matter Jurisdiction **[ECF No. 38]**, concluding that Plaintiffs adequately established that the monetary value of the object of the litigation – from Plaintiffs' perspective pursuant to *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) – exceeds $75,000. **[ECF No. 60]**.

[5] Plaintiffs correctly note that Defendant failed to plead patent misuse as an affirmative defense. *See* **[ECF No. § IV.A.1]**. Although Defendant argues that patent misuse must only be raised as an affirmative defense in the context of a patent infringement claim, Defendant has moved to amend its affirmative defenses to include patent misuse. **[ECF No. 251]**. Defendant's Motion to Amend is addressed in a separate order.

9

> indirectly, to develop, manufacture or to have manufactured, distribute, promote, market, sell or lease a medical device for blood or blood product irradiation, which is used or useable to reduce the risk of Graft Versus Host Disease or other blood borne pathogen, **and which embodies in whole or in part, the Patents**.

**[ECF No. 108, pp. 17-18]** (emphasis added). According to Defendant, the third sentence of Section 3.1 "limits Rad Source's ability to deal in any blood irradiation device." **[ECF No. 118, p. 11]**. As noted during oral argument on the parties' Motions for Summary Judgment, the meaning and scope of the parties' intent as articulated in the License Agreement is ambiguous and unclear from the face of the agreement. What the parties envisioned by including the language in Section 3.1, including the extent of the parties' proposed limitations of Defendant's participation in the blood irradiation marketplace, involves factual determinations that will require evidence of the meaning of the parties' agreement and their intent.

Furthermore, whether there was patent misuse in this case requires a determination of whether the RS 3400 "embodied, in whole or in part," the patents referred to in the License Agreement. Plaintiffs submit expert reports setting forth that the RS 3400 embodies the primary patent subject to the License Agreement. According to Plaintiffs' experts, "each and every element of Claim 6 of the '255 Patent can be found in the RS 3400, and therefore, the RS 3400 embodies, in whole or in part, the '255 Patent." Defendant submits an expert report proposing that the RS 3400 embodies no part of the patents. The rebuttal expert reports submitted by Plaintiffs find fault in Defendant's expert's methodology. Although I reserve ruling on Defendants' motions *in limine* to exclude Plaintiffs' experts, I find highly disputed issues of material fact with regards to whether the RS 3400 embodies in whole or in part the '255 Patent.

Notwithstanding whether Defendant must plead patent misuse as an affirmative defense, examining the meaning of the parties' agreement and resolving whether the RS 3400 "embodied, in whole or in part," the patents are inquiries that require factual determination and are unfit for summary judgment.

### B.  Non-compete provision of License Agreement

Rad Source argues that the non-compete provision of the License Agreement is overbroad, overlong, and unenforceable as a matter of Florida law, citing Fla. Stat. § 542.335, the Florida Restrictive Covenant Statute. In their Motion for Summary Judgment, Plaintiffs maintain that the non-compete provision is valid and enforceable under the Florida Restrictive Covenant Statute. For the reasons discussed *infra*, neither Defendant nor Plaintiffs can prevail on their respective Motions for Summary Judgment because the determination of whether the non-compete provision is valid involves questions of fact, and not questions of law.

Covenants that restrict or prohibit competition are enforceable "so long as such contracts are reasonable in time, area, and line of business." Fla. Stat. § 542.335(1). Both Florida courts and federal courts have found that whether a business has a legitimate business interest justifying restrictions and whether the restrictions are reasonable in time, area, and line of business are questions of fact, and not of law. *LT's Benjamin Records, Inc. v. Machete Music*, 2010 U.S. Dist. LEXIS 70487, 14-15 (S.D. Fla. June 24, 2010) (citing *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1237-38 (11th Cir. 2009); *Whitby v. Infinity Radio*, 951 So.2d 890, 897 (Fla. Dist. Ct. App. 2007); *accord American Standard, Inc. v. Humphrey*, 2007 U.S. Dist. LEXIS 73593, 2007 WL 2852362 at *3 (Oct. 2, 2007)).

While my October 27, 2009 Order contained various findings of fact and conclusions of law, this order was entered into following an evidentiary hearing and for the purposes of issuing a preliminary injunction. *See generally* **[ECF No. 40]**. This order discussed the non-competition clause contained in Section 5.3 of the License Agreement and its reasonableness. *Id.* Notably, this was a Preliminary Order that did not discuss Section 3.1 in the context of reasonableness in the line of business, temporal scope, or geographic scope. Since this time, the parties have conducted additional discovery and upon their respective Motions for Summary Judgment, the parties have offered facts that have been developed since the Preliminary Order was initially entered. Since the validity of the non-compete provision of the License Agreement necessarily requires a review of the facts regarding the reasonableness of the business interests, time, and geographic range, and these are disputed issues, I cannot determine that either Plaintiffs or Defendant is entitled to summary judgment with respect to a determination of the validity of the non-compete provision.

### C. Whether Defendant breached the non-compete provision

Plaintiffs also move for summary judgment with respect to Defendant's alleged violation of the non-compete provision in the License Agreement. In support of Plaintiffs' argument, Plaintiffs offers a host of actions that Defendant allegedly took to promote, market, develop, and offer for sale the RS 3400 device. *See* **[ECF No. 159, pp. 10-11]**. In response, Defendant attacks the validity of the non-compete provision, claiming it is unenforceable. Defendant also contests Plaintiffs' description of the activities Defendant engaged in while allegedly breaching the License Agreement's non-compete provision.

As further discussed *infra*, the intention of the parties when executing the License Agreement is unclear and it is necessary for the parties to present evidence regarding their understanding of the agreement at the time of its formation. For example, Defendant characterizes "marketing" (an action Plaintiff points to as a violation of the License Agreement) as a mere series of "prepatory activities that do not constitute competition[.]" **[ECF No. 186, p. 14]**. It is clear that the parties do not agree on the scope of activities contemplated within the License Agreement that would constitute a breach of the non-compete provision. Furthermore, since I am unable to determine, as an initial matter, whether the non-compete provision is valid, it follows that I am similarly unable resolve the issue of whether Defendant breached the non-compete provision on summary judgment.

D. **Whether the 2008 Sublicense Agreement is valid**

In Section 3.1 of the License Agreement, Rad Source granted MDS "an exclusive right and license (transferable, with the right to grant <u>sublicenses</u> to third parties ('Sublicensees') on such terms as are consistent with this Agreement[.]" **[ECF No. 108 pp. 17-18]** (emphasis added). Section 13.9 of the License Agreement prohibits any party from <u>assigning</u> its rights and obligations under the License Agreement without the other party's consent. Plaintiffs seek summary judgment on the validity of the 2008 Sublicense Agreement between MDS and the Best Plaintiffs, arguing that this was a valid sublicense which did not relieve Rad Source of its obligation to comply with the terms of the License Agreement.

The parties fundamentally disagree whether MDS sublicensed or assigned its rights to the Best Plaintiffs. Plaintiffs argue that they sublicensed the rights to the Best

Plaintiffs and that Rad Source was aware of the Sublicense Agreement, never objected to it, and never asserted that the Sublicense was a breach of the License Agreement. Defendant's position is that the 2008 Sublicense Agreement "is a 'sublicense' in form, but not in substance [because] it is an improper assignment of the 2003 License Agreement." **[ECF No. 186, pp. 16-17]**. Again, this involves an interpretation of the contract which is subject to examination of the parties' intent in forming the License Agreement. Although it appears that the parties contemplated a distinction between sublicensing and assigning their rights under the License Agreement, it is not clear what specific restrictions and consequences the parties intended when drafting the provisions of the License Agreement regarding sublicensing and assignments.

E.   **Extension of the preliminary injunction**

An injunction is limited to prospective relief. *See Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965) ("injunctive relief looks to the future."). Preventing irreparable harm in the future is "the sine qua non of injunctive relief." *Ne. Fla. Chapter of Assoc. of Gen. Contractors of Amer. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting Frejlach v. Butler, 573 F.2d 1026, 1027 (8th Cir. 1978)). "Thus, a preliminary injunction is completely at odds with a sanction for past conduct that may be addressed by adequate remedies at law." *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1133 (11th Cir. 2005). "The sole function of an action for injunction is to forestall future violations. It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured." *United States v. Oregon State Medical Soc.*, 343 U.S. 326, 333 (1952).

Plaintiffs argue that I should extend the preliminary injunction entered into on November 4, 2009 to enjoin Rad Source from carrying on any activities which would compete in the blood irradiation business. Plaintiffs acknowledge that the original expiration date of the non-compete provision was September 26, 2010. As Defendant correctly notes, Plaintiffs' Motion for Summary Judgment is devoid of any cited authority for their requested relief. See **[ECF No. 186, fn. 15]**. Notwithstanding Plaintiffs' lack of cited authority, Plaintiff has simply not demonstrated a likelihood of success now that the non-compete provision has expired. As discussed *supra*, my October 27, 2009 Order was limited to the determination of whether a preliminary injunction should be issued. See generally **[ECF No. 40]**. Accordingly, I deny Plaintiffs' request to extend the preliminary injunction at this time.

### F.   Whether Plaintiffs have standing to enforce the License Agreement

A party seeking enforcement of a restrictive covenant must demonstrate "the existence of one or more legitimate business interests justifying the restrictive covenant." Fla. Stat. § 542.335(1)(b). In Defendant's Second Motion for Summary Judgment, Defendant claims that MDS has no standing to enforce the non-compete provisions in the License Agreement because MDS assigned its rights and obligations in the License Agreement to the Best Plaintiffs, thereby eliminating any legitimate interest in the blood irradiation business. Defendant further argues that the Best Plaintiffs are not expressly authorized to enforce the non-compete provisions in the License Agreement, therefore that none of the Plaintiffs have standing to enforce the License Agreement. As discussed *supra*, Plaintiffs characterize the same transaction between MDS and the Best Plaintiffs as a sublicense.

There are clearly disputed issues of material fact regarding whether MDS remains in the blood irradiation business and therefore has standing to enforce the License Agreement. *Compare* **[ECF No. 194 p. 9]** ("Moreover, MDS is still in the blood irradiation business.") *with* **[ECF No. 146 pp. 16-17]** ("What is clear from these provisions in the 2008 Sublicense Agreement is that MDS had divested itself of any rights or obligations under the 2003 License Agreement" and "there is no doubt that MDS . . . existed the blood irradiation business through the 2007 Asset Purchase Agreement and the 2008 Sublicense Agreement"). This determination of whether Plaintiffs have standing to enforce the License Agreement depends upon the interpretation of agreement itself and whether the rights were sublicensed or effectively assigned to the Best Plaintiffs by MDS, both issues which require factual determination that are not suitable for summary judgment.

G. **Whether Plaintiffs have legally recoverable damages**

Section 13.1 of the License Agreement, entitled "No Consequential Damages," provides that "[n]either party shall be liable to the other under any circumstances, for any indirect, special, consequential or incidental damages." **[ECF No. 108, p. 33]**. Section 13.1 appears in the "Article XIII – Miscellaneous" section of the License Agreement. *Id.* Defendant moves for summary judgment on the basis that Plaintiffs lack proof of monetary damages. Defendant acknowledges that Plaintiffs have submitted expert testimony regarding lost profits, sales, and what appear to be lost opportunities for Plaintiffs to enter into contracts for sales. *See* **[ECF No. 194, pp. 6-7, 13-15]**. While Plaintiffs do not dispute that the License Agreement contains a clause

precluding recovery of consequential damages, Plaintiffs argue that their damages for lost sales are not within this category of unrecoverable damages.

In accordance with the discussion regarding Defendant's motions *in limine* to exclude Plaintiffs' expert witnesses, I reserve ruling upon whether Plaintiffs' expert witness testimony regarding Plaintiffs' damages should be excluded at this time. *See supra* § V.A. Similarly, whether Plaintiffs may recover damages cannot be resolved in favor of Defendant at this time. Plaintiffs' claims for damages relate to the design, development, marketing, and promotion of devices that embody in whole or in part Claim 6 of '255 Patent and future damages based on Defendant's alleged breach of Section 3.1, which involve factual determinations. **[ECF No. 256, 27:5-9]**. As discussed throughout this order, the numerous issues for which the parties seek summary judgment require an inquiry of their intentions at the time of formation of the License Agreement and will necessitate the presentation of such evidence. Therefore, based on disputed issues of material fact, summary judgment on the matter of Plaintiffs' damages is denied.

## VI. Conclusion

Based on the foregoing, it is hereby ORDERED and ADJUDGED that:

1. Defendant's Motion for Partial Summary Judgment **[ECF No. 118]** is DENIED.
2. Plaintiffs' Motion for Summary Judgment **[ECF No. 128]** is DENIED.
3. Defendant's Second Motion for Partial Summary Judgment **[ECF No. 141]** is DENIED.

DONE and ORDERED in Chambers at Miami, Florida this 21 day of December, 2010.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATED DISTRICT JUDGE

cc:   U.S. Magistrate Judge Chris M. McAliley
      Counsel of record